Phillips KINDY, Laurence M. Nelson and Livingston Garden Apartments, Inc., Appellants,

v.

First Lieutenant Bernard G. KOENKE, Appellee.

No. 15063.

United States Court of Appeals Eighth Circuit.

Nov. 19, 1954.

Lewis L. Anderson, St. Paul, Minn., for appellants.

O'Toole & Miller, St. Paul, Minn., submitted motion of appellee to dismiss.

Before SANBORN, JOHNSEN, and COLLET, Circuit Judges.

COLLET, Circuit Judge.

Bernard G. Koenke, a citizen of Minnesota and a reserve officer in the United States Air Force, was recalled for active duty, reporting on June 8, 1951. At that time he had almost completed the construction of a number of housing units under contract with the owner corporation, Livingston Garden Apartments, Inc. The contract provided for a lump sum payment to Koenke of approximately $91,000. The total costs had been estimated at over $100,000. The "owner" corporation had been incorporated by Koenke and Phillips Kindy for the purpose of erecting the buildings. All of its stock was to be owned by Koenke and Kindy in equal amounts. A loan to the corporation was arranged for, that money to be used to pay Koenke, as the contractor, and some additional costs. It appears [1] that Koenke and Kindy agreed to furnish in equal amounts such additional money as might be needed to complete the project. Upon completion, by their equal ownership of the stock of the owner corporation, they were to share equally in the ownership of the apartments. Shortly before Koenke was called for active service, costs having mounted above what was originally anticipated, Koenke, Kindy, and Laurence M. Nelson, the attorney who had incorporated the Livingston Garden Apartments, Inc., held a conference as a result of which a written agreement was entered into between Koenke and Kindy, dated April 27, 1951, which appears to have authorized Nelson to sell some properties privately owned by Koenke and apply the proceeds of such sales to Koenke's one-half of the additional capital needed to complete the Livingston Garden Apartments. It further appears that the April 27, 1951, agreement made a provision for the forfeiture to Kindy of Koenke's interest in the corporation if Koenke's part of the needed additional capital was not produced before August 1, 1951.

On July 24, 1951, while Koenke was on active duty, he filed a petition in the United States District Court of Minnesota stating in substance the foregoing facts and praying for an injunction against Kindy, Nelson and the Livingston Garden Apartments, Inc., under the Soldiers' and Sailors' Act of 1940, 50 U.S.C.A.Appendix, §§ 501–548, 560–590, restraining them for the duration of Koenke's military service and for three months thereafter, "or for such additional time as may seem just to the Court," from filing any actions against him, from instigating or causing any to be filed or taken against him, "with respect to any of the building matters, notes, liens, or other obligations whatsoever except after hearing of this case." The petition further prayed that a receiver be appointed by the court, that Nelson be required to turn over to the receiver the title and possession of all of Koenke's private property, that the receiver take charge of that property and liquidate it for the purpose of raising Koenke's part of the required additional capital to complete the Livingston Garden Apartments, that the receiver take charge of the income from the apartment property, and for other related relief. An order to show cause was issued, directed to the defendants, and pending the hearing thereon a temporary restraining order was issued. The order named a receiver. An answer was filed, which among other things prayed for the dissolution of the restraining order. A hearing was held. After hearing, a preliminary injunction was issued substantially as prayed for. The receiver was empowered to sell the private property of Koenke and apply the proceeds to the latter's obligations incident to the completion of the apartments. The receiver was authorized and directed to take complete charge of the apartment building project. That order was entered September 28, 1951. It was amended in unimportant details November 1, 1951.

---

[1] We use that term advisedly, as it is impracticable, because of the very meager record, to state facts of this nature positively, and our statement of the facts, made for the purpose of illuminating the issues on this appeal, must not be taken as an adjudication of the facts for future purposes.

On October 15, 1953, the defendants filed a motion praying for the dissolution of the injunction, that the receiver be required to make a final accounting and be discharged, and that the receiver return the assets of the receivership "to the persons from whom they were received." The motion stated that the need for the injunction and the receivership no longer existed because Koenke was released and discharged from military service more than six months prior thereto. It was subsequently admitted that he was discharged November 1, 1952. The motion was denied March 4, 1954, and the case placed on the trial docket. The defendants have appealed from the order denying their motion.

There is some indefiniteness concerning what specific issues Plaintiff Koenke proposes to present to and have determined by the District Court. He contents himself on this appeal with filing a motion to dismiss the appeal on the ground that the order of the District Court denying the motion to terminate the receivership and dissolve the injunction is not an appealable order.

In support of the motion to dismiss the appeal, several cases to the effect that an appeal may be taken only from final judgments are cited. Those authorities are not controlling here. Appeals from interlocutory orders of District Courts "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court", and "Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property", are by the language just quoted made appealable by Section 1292, Title 28, U.S.C.A. The motion to dismiss the appeal is therefore denied.

The question presented on the appeal can only be answered in general terms. Appellants insist that the injunction should be dissolved and the receiver discharged. We do not observe from the record before us that the District Court disagrees with that position. The troublesome question is when, and what must and should be done before that final action is taken. The latter question will be answered by determining what the District Court has jurisdiction to do under the Soldiers' and Sailors' Act.

The Soldiers' and Sailors' Civil Relief Act of 1940, heretofore cited, as stated in the Act, § 510, was enacted to provide "for the temporary suspension of legal proceedings and transactions which may prejudice the civil rights of persons in such [military] service during the period herein specified * * *." The period specified for the continuation of any stay "of any action, proceeding, attachment" is defined in § 524 as follows: "Any stay of any action, proceeding, attachment, or execution, ordered by any court under the provisions of this Act [sections 501–548 and 560–590 of this Appendix] may, except as otherwise provided, be ordered for the period of military service and three months thereafter or any part of such period * * *."

Although both parties appear to assume that § 524 fixes the period of jurisdiction in actions of this kind under the Soldiers' and Sailors' Civil Relief Act, it appears that § 524 is intended to apply more particularly, although not exclusively, to actions brought by others than servicemen and in which the serviceman is made a party, whereas § 590, entitled "Further Relief," appears to apply specifically to actions instituted by the serviceman under the Act and, upon compliance with certain conditions which the record indicates may exist, fixes the time limit of "a stay of the enforcement * * * of any other obligation, liability * * * during the applicant's period of military service and, from the date of termination of such period of military service * * * for a period of time equal to the period of military service of the applicant or any part of such period, subject to payment of the balance of principal and accumulated interest due and unpaid at the date of termination of such period of military serv-

ice or the date of application, as the case may be, in equal periodic installments during such extended period at such rate of interest as may be prescribed for such obligation, liability, tax, or assessment, if paid when due, and subject to such other terms as may be just." If the conditions specified in the latter part of § 590(1)(b) exist and were complied with, and for present purposes we will assume they do and were, § 590 fixes the duration of the period of a stay of the enforcement of obligations such as those involved here which may be granted in cases brought by the serviceman at a period which ended March 24, 1954. Therefore, we will assume at the time the motion to dissolve the injunction and terminate the receivership was filed on October 15, 1953, and at the time it was denied on March 4, 1954, the District Court still possessed jurisdiction to continue the stay authorized by the Act and that the motion was therefore properly denied, absent an abuse of discretion which does not appear. Since both the parties have assumed that the extent of the stay period fixed by the Act ended prior to the dates when the motion was filed and denied—plaintiff by originally requesting in his petition a stay during the duration of his military service and three months thereafter, and defendants by asserting on this appeal the application of § 524—and since the periods fixed by both § 524 and § 590 have both now expired, the real question of what powers and jurisdiction the trial court possesses subsequent to the termination of the stay period fixed by the Act remains unanswered. Under these circumstances it is better to settle that question as definitely as it may be settled upon the record before us than to stop with a determination of the propriety, at the time made, of the order overruling the motion and leave the main question for disposition on a possible subsequent appeal.

■ The intent of the Soldiers' and Sailors' Civil Relief Act of 1940 is that stays granted solely on account of the serviceman's military service be termi-nated at the expiration of the period specified in the Act. In proceedings of this kind, where a receiver has been appointed and has been operating properties for a considerable length of time, it is impracticable and would be improvident to require that all jurisdiction abruptly cease on the day the statutory period ended. We do not construe the Act to require that. But all jurisdiction of the court does end at that time to grant or to continue relief under the Act and the only jurisdiction remaining is to do the things that are necessary to be done expeditiously to wind up the receivership in an orderly manner. Jurisdiction to continue the stay ceases on the date the Act specifies. The injunction and restraining orders should therefore be dissolved immediately.

■ Plaintiff indicates in suggestions filed in support of his motion to dismiss this appeal that he intends to invoke the jurisdiction of the District Court to determine the contractual rights between the parties as a necessary incident to the closing of this case. Authorities to the general effect that where two courts of concurrent jurisdiction become concerned with the handling and disposition of property, that court which first comes into possession and control of the *res* will continue to have jurisdiction of it are cited in support of his position that such questions should be settled before the cause is terminated. Those authorities do not apply. The federal court of Minnesota never had jurisdiction to determine the property rights of and between these parties, and hence did not have concurrent jurisdiction with any court for that purpose. All were citizens of Minnesota. There was no diversity of citizenship, and no rights involved can be said to arise under the Constitution or the laws of the United States. It is not suggested nor do we perceive that any other ground for jurisdiction could possibly exist other than that given by the Soldiers' and Sailors' Civil Relief Act. The jurisdiction given by that Act is only to temporarily stay

proceedings or the enforcement of obligations affecting rights of a serviceman at a time when he was in no position adequately to protect his interests. It confers no jurisdiction in a court to determine rights between parties, which jurisdiction the court would not have possessed, absent this Act.

At the outset we stated that the main question presented—when the proceedings should be terminated and what should be done prior thereto—could be answered only in general terms. The record before us very properly contains only that which is necessary to present the broad question of the trial court's present jurisdiction. We know practically nothing about the details of the administration of the receivership. And even if we did it would be neither practicable nor appropriate for this court to undertake to determine in advance of its consideration by the trial court the manner of disposing of the several administrative questions incident to winding up the receivership. That is the function of the trial court in the first instance. This court is one of review. But on the record here we can and do hold that the trial court is now without jurisdiction to do more than expeditiously terminate the receivership. All stay orders and injunctions preventing the filing and prosecution of actions in a court of competent jurisdiction to determine the rights of the parties between themselves and in and to the property involved should be immediately dissolved. The trial court has jurisdiction to terminate the proceedings in an orderly manner and restore the property now in the court's charge, as nearly as conditions permit, to where it was at the time of the commencement of this action and relegate the parties to a proper forum for the settlement of such differences as they may not be able to adjust between themselves.

The order appealed from is vacated and the cause remanded for further proceedings consistent herewith.