**SECURITIES AND EXCHANGE COMMISSION, Appellee,**

v.

**Ernest A. BARTLETT, Jr., Joe Lee Anderson, E. M. Clem, Gaylord B. Roberson, Joe D. Jeryo, Nyle B. Oswalt, Afton A. Borum, Ralph C. Ingram, Pete Wells, Paul A. Michler, Leslie D. Humphrey, Lawrence T. Davis and Hoyt Borum, Appellants.**

**SECURITIES AND EXCHANGE COMMISSION, Appellee,**

v.

**ARKANSAS LOAN AND THRIFT CORPORATION, an Arkansas Corporation; United Loan and Investment Company, an Arkansas Corporation; Savings Guaranty Corporation, an Arkansas Corporation; Ernest A. Bartlett, Hoyt Borum, Afton Borum, Appellants.**

Nos. 19622, 19623.

United States Court of Appeals, Eighth Circuit.

Feb. 17, 1970.

**476**

Sam Sexton, Jr., of Sexton & Wiggins, Fort Smith, Ark., for appellants in both cases.

Paul Gonson, Asst. Gen. Counsel, Securities and Exchange Comm., Washington, D. C., for appellee; Philip A. Loomis, Jr., Gen. Counsel, David Ferber, Solicitor, and Warren G. Stolusky, Atty., Securities and Exchange Comm., Washington, D. C., and Robert F. Watson, Spec. Counsel, Fort Worth Regional Office, Securities and Exchange Comm., Fort Worth, Tex., on the brief.

Before MATTHES, BLACKMUN and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

In these appeals thirteen former officers, directors and trustees of three Arkansas corporations now administered by a receiver seek to overturn rulings of the district court in connection with that receivership. In No. 19622, they appeal the order denying them the right to "assist" the receiver in collecting accounts owing the defunct corporations; in No. 19623, they appeal the order refusing their motion to vacate the receivership and refer interested parties to the court of bankruptcy as the appropriate forum for further proceedings. The trial court's opinion, Securities & Exchange Commission v. Ar-

kansas Loan & Thrift Corp., 294 F.Supp. 1233 (W.D.Ark.1969), supports the latter order. Our frame of reference is formed from litigation which preceded these questioned orders.

In March of 1968,[1] the Securities and Exchange Commission (SEC) filed an action in the United States District Court for the Western District of Arkansas alleging that defendants Arkansas Loan and Thrift Corporation (AL& T), a corporation engaged in consumer financing with offices in several Arkansas cities, and two of its affiliate companies, United Loan and Investment Company (United) and Savings Guaranty Corporation (Savings),[2] violated provisions of the Securities Act of 1933 [3] by using the mails to sell securities not registered with the Commission and to sell securities through fraudulent means.[4] The SEC also claimed the corporations were insolvent. The trial court, as requested by the SEC, granted immediate relief by temporarily enjoining the defendants, their officers and agents, from engaging in further corporate transactions and appointing a receiver to *conserve* corporate assets.

Defendants answered, denying the allegations of the complaint and resisting the receivership. However, in a hearing held on September 10, they acknowledged the insolvency of the corporations, consented that the injunction be made permanent and agreed that Lem C. Bryan, the receiver previously appointed by the district court, "proceed with an orderly liquidation of the assets of the defendant corporations". This oral agreement was followed by a formal stipulation executed by the corporations and most of their directors and trustees (including almost all of these appel-

---

1. All court proceedings occurred in 1968, except as otherwise stated.

2. The complaint also named an executive from each corporation as a defendant. These individuals also appear as appellants here.

3. 15 U.S.C. §§ 77e(a) and 77e(c) (sale of unregistered securities); 15 U.S.C. § 77q (a) (sale of securities by fraud).

4. United possessed a certificate of authority enabling AL&T to issue and sell investments to the public, which in turn were guaranteed by Savings. AL&T provided the collateral for Savings, which undertook to guarantee AL&T's investments.

lants). The trial court entered orders conforming to this agreement. This apparent capitulation to the demands of the SEC proved to be shortlived. On October 23, the appellants presented their petition seeking to participate in the liquidation of corporate assets (our No. 19622). The district court denied that petition on November 13. Appellants perfected an appeal from this order on November 27. Thereafter, on December 27, they moved to vacate the receivership (our No. 19623).

At first blush, it appears we lack jurisdiction to consider the first appeal since this ruling probably does not fall within the statutory command limiting our appellate jurisdiction of interlocutory appeals to those orders refusing "to wind up receiverships or to take steps to accomplish the purpose thereof, such as directing sales or other disposals of property". 28 U.S.C. § 1292 (a) (2). See Wark v. Spinuzzi, 376 F.2d 827 (5th Cir. 1967); Kindy v. Koenke, 216 F.2d 907 (8th Cir. 1954). However, the issue of the trial judge's bias and prejudice urged as the only ground for reversal in the appellants' first appeal is also raised in their second, from the order denying the motion to vacate the receivership. The latter order is specifically made appealable under § 1292(a) (2). Since appeal No. 19623 (vacation of receivership) permits us to consider all issues, we turn to it.

Appellants urge that the trial court erred in directing the receiver to liquidate the defendant corporations as well as claiming that Judge Miller's bias and prejudice require another judge to reconsider the appellants' motion to vacate the receivership.

■ Though appellants speak of an objection to the court-ordered liquidation of the corporations on jurisdictional grounds, the cases which they cite decide such issues in terms of propriety of the order. Appellants here mount no assault on the general, broad equity powers possessed by federal courts.[5] They rely principally on Los Angeles Trust Deed & Mortgage Exchange v. Securities & Exchange Commission, 285 F.2d 162 (9th Cir.), cert. denied, 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961). There, the SEC charged three interrelated investment corporations with violation of federal securities laws, including selling securities by fraudulent means and selling unregistered securities. The plaintiff sought injunctive relief and appointment of a receiver to conserve and *liquidate* defendants' assets. The Ninth Circuit approved that part of the district court's order empowering the receiver to conserve,[6] but

---

5. Justice Brandeis summarized:
   "The appointment of a receiver of a debtor's property by a federal court confers upon it, regardless of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets." Riehle v. Margolies, 279 U.S. 218, 223, 49 S.Ct. 310, 312, 73 L.Ed. 669 (1929). See also Re Metropolitan Ry. Receivership, 208 U.S. 90, 28 S.Ct. 219, 52 L.Ed. 403 (1908); Bellevue Gardens, Inc. v. Hill, 111 U.S.App.D.C. 343, 297 F.2d 185, 187 (1961); Bailey v. Proctor, 160 F.2d 78, 81 (1st Cir.), cert. denied, 331 U.S. 834, 67 S.Ct. 1515, 91 L.Ed. 1847 (1947); Tower Hill-Connellsville Coke Co. v. Piedmont Coal Co., 64 F.2d 817, 91 A. L.R. 648 (4th Cir.), cert. denied, 290 U.S. 675, 54 S.Ct. 93, 78 L.Ed. 582 (1933); *cf.* Kelleam v. Maryland Casualty Co., 312 U.S. 377, 61 S.Ct. 595, 85 L.Ed. 899 (1941).

6. Though neither the Securities Act of 1933 (15 U.S.C. § 77a et seq.) nor the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.) specifically authorize receiverships, the court said:
   "Nevertheless, we conclude there exists under [these acts] the power and authority in the SEC to bring this action, and power in the district court, as a court of equity, to appoint a receiver to maintain in status quo the assets of the appellants * * *." 285 F.2d at 181.
   *Accord,* Securities & Exchange Commission v. S & P National Corp., 360 F.2d 741 (2d Cir. 1966); Lankenau v. Coggeshall & Hicks, 350 F.2d 61 (2d Cir. 1965); Esbitt v. Dutch-American Mercantile Corp., 335 F.2d 141 (2d Cir.

disapproved its further direction to liquidate, reasoning:

"The trial court has found insolvency in the bankruptcy sense, but there is no apparent reason here why the violation of the Securities Act and the Securities Exchange Act should lead to a different type of final liquidation than that which is had for the normal corporate bankrupt. In true bankruptcy, procedures are better geared for creditors and depositors to give them a day in court and protect their rights. Also, the Bankruptcy Act (11 U.S.C.A. § 1 et seq.) has provisions for reorganization.

\* \* \* \* \* \*

However, a receiver does seem required. But, we are not yet willing to order liquidation. That would establish perhaps generally a special additional penalty for failure to comply with the two Acts of Congress with which we were here concerned and we doubt that this was within the contemplation of Congress. We do not hold that liquidation can not ever be effected. Possibly some circumstances might arise which would justify such a result. And, it could even eventuate in this case, but we hold 'not now.' " 285 F.2d at 182.

Also, appellants refer us to Esbitt v. Dutch-American Mercantile Corp., 335 F.2d 141 (2d Cir. 1965). There, in defense of a suit brought by the receiver to collect obligations owing the corporation, a debtor asserted the receiver lacked power to collect the insolvent's assets. A portion of the court's opinion on which appellees rely reads:

"We see no reason why violation of the Securities Act should result in

the liquidation of an insolvent corporation via an equity receivership instead of the normal bankruptcy procedures, which are much better designed to protect the rights of interested parties." 335 F.2d at 143.

However, the court rejected the defense, concluding:

" \* \* \* [T]he receivership has progressed almost to completion without objection and it would apparently not be in the interests of the parties to direct that further proceedings be diverted into bankruptcy channels." 335 F.2d at 143.

The observations of the Second and the Ninth Circuits in these two cases enunciate the familiar equity rule that the federal courts should sparingly exercise their powers to appoint receivers and to administer and liquidate corporations.[7] Whether it is appropriate to do so depends on the underlying circumstances.

The record before Judge Miller disclosed that after July, 1965, the defendant AL&T had issued more than four million dollars worth of interest-bearing bond investment certificates, many of them to innocent members of the public who apparently thought they were investing in savings accounts similar to those provided by banks and savings and loan associations. AL&T's advertising materials represented that these investments, "thrift savings accounts", were each insured to $25,000.00 and earned the highest available interest (5¾%) with "insured safety". More than 2,100 persons in Arkansas and surrounding states held such securities interests in AL&T and the record reflects that the court was concerned that

1964); Securities & Exchange Commission v. Keller Corp., 323 F.2d 397 (7th Cir. 1963); East v. Crowdus, 302 F.2d 645 (8th Cir. 1962) (dictum).

7. For example, the courts rejected such exercise of equity powers in Shapiro v. Wilgus, 287 U.S. 348, 53 S.Ct. 142, 77 L.Ed. 355, 85 A.L.R. 128 (1932), and People of State of Michigan by Haggerty v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136 (1932), to avoid

abuses to creditors or to prevent utilization of such procedures as instruments of coercion; in Harkin v. Brundage, 276 U.S. 36, 48 S.Ct. 268, 72 L.Ed. 457 (1928), to avoid intrusion on litigation pending in a state court and in New England Coal & Coke Co. v. Rutland R. Co., 143 F.2d 179 (2d Cir. 1944), to avoid usurping powers and authority that can be exercised more efficiently and effectively in bankruptcy procedures.

these creditors' claims be processed and paid to the extent possible, as rapidly as possible.[8]

In denying appellants' motion to vacate the receivership, Judge Miller determined:

(1) Appellants' motion raises no new issue of fact. The court's order of September 23, based on the September 10 proceedings, determined that the interests of the creditors and others are best served by the receiver liquidating the defendant corporations.

(2) As the court has already found, defendants have violated the securities laws and they are insolvent; their former officers, directors and trustees (including some of the appellants) have mismanaged these corporations.

(3) The movants' activities demonstrate lack of cooperation with the receiver in his efforts to promptly liquidate the corporations' assets. Among other things, they still owe personal debts to the corporations.

(4) The receiver shows progress in his efforts to liquidate the corporations.

(5) Appellants' suggestion for reorganization of the corporations under Chapter X of the Bankruptcy Act lacks merit since all three corporations are insolvent beyond rehabilitation and at least one of them, United, has been deprived of authority to transact business by action of an Arkansas state court.

(6) Appellants consented to the receivership. The failure of the receiver to file a formal plan for liquidation within thirty days, as scheduled by the court's order of September 23, does not vitiate appellants' consent. Circumstances beyond the receiver's control have produced delay; the court has granted the receiver additional time to submit his plan.[9]

(7) Diverting further proceedings into bankruptcy channels would not advance the liquidation of the defendant corporations nor serve the best interests of creditors.[10]

In our view, these reasons justified continuing the receivership for the purpose of liquidating defendant corporations.

Appellants say Judge Miller first evidenced a biased state of mind at a hear-

---

8. For example, on the hearing on September 10, this amusing colloquy between court and creditor illustrated the need for expeditious action:

"The Court: The Court will be in recess and we will follow through just as fast as we can for the benefit of you people who are interested and I know you are interested.

A Spectator: May I address the Bench?

The Court: Who are you?

A Spectator: I am Ray Pammler, I am representing the Booneville Lutheran Mission, this is a church account that we have here in the bank and it is our building fund and we have been denied the chances to build, I was wondering if it was possible if the church accounts, I know of another man here that has a church account, is it possible to make these preferred accounts?

The Court: I do not think so to be perfectly frank with you, that is something that I am not forestalling, I am

not fore-closing it but the church is in no worse shape than hundreds of individuals.

Mr. Pammler: This is not people's money, this is God's money.

The Court: God should have looked after it a little better then so Court will be in recess."

9. Neither appellants' oral or written stipulation to the liquidating receivership conditioned that consent upon the receiver submitting any formal plan of liquidation within any specified period of time.

10. The court's confidence in the ability of the receiver to make an early pro rata distribution of the assets to holders of thrift accounts appears justified by the record submitted to this court. In response to the receiver's proposal made in February of 1969, the court directed a *pro rata* distribution of assets to those holders of thrift accounts on April 28, 1969.

ing on their petition seeking permission to collaborate with the receiver in collecting debts owed to defendants. At the November 13 hearing, the court dismissed the petition on motion of the SEC on the ground that the appellants had consented to the court's earlier order that the receiver liquidate defendant corporations. After stating his decision, Judge Miller further remarked from the bench:

"These Directors complain that they don't know what or why you are not collecting. I know that you have sent out letters and made requests for payment. The time for that has past. If there is an indebtedness over there represented by notes or otherwise be prepared and prepare—if you need other attorneys to help you they will be available—I want you to proceed to foreclose every mortgage that by the terms of it can be foreclosed. Now, you will run into some mortgages that can't be foreclosed because of the terms of it, but most of them have accelerating clauses I assume, but I want attention given to that *and I am going to stop some of this talk around here by somebody. Now, for instance, I got three calls yesterday from ladies telling me that she hoped that I would turn this thing back to the Board of Directors because she had been assured that she would be paid by them and that the Receiver was spending an enormous amount of money and all of that kind of stuff. Now, I am going to talk to anybody that wants to talk to me about anything that is pertaining to this, but the time has come and Mr. Fitzhugh [Receiver's counsel] I want you to prepare and the other attorneys to prepare for this, the time has come for definite, positive action and no more excuses are going to be made. They come in here wanting to collect these assets, I would not turn these assets back, it would take the Supreme*

*Court of the United States to make me do it, I would not turn these assets back to this Board of Directors and I am saying that I am sure some of them are good, honest men; they may all be honest men, they may be just mistaken men, but I am not going to give them another opportunity if I can to manipulate this thing like it has been manipulated in the past.*

*Now that is pretty straight talk and probably talk that should not have been made by a Judge but I feel very deeply the concern for the depositors and I want you to use all speed and if there are persons that are not making proof of their indebtedness put them on another list and let's pay those that are making it known. I am not going to let it be held up by the neglect of a few so just go ahead and do it and if you need more help to do it get it. Now that is just about all but I am insisting upon a little harsher course, a little more ambitious course, than you have had because the time has come when negotiations are out, it is now payday."* (Emphasis added.)

Appellants declare that part of the judge's discourse to which we have added emphasis discloses personal prejudice on the part of the trial judge that has infected all subsequent proceedings.

▮ We think it significant that appellants, after listening to the remarks to which they here take offense, filed no affidavit of prejudice even though such an affidavit is generally required to preserve any claim of error on appeal. 28 U.S.C. § 144; Fed.R. Civ.P. 46; Cox v. United States, 309 F.2d 614 (8th Cir. 1962); Adams Dairy Co. v. St. Louis Dairy Co., 260 F.2d 46 (8th Cir. 1958). To the contrary, several weeks later the appellants asked Judge Miller to vacate the receivership.

Even ignoring Rule 46, appellants present no basis to sustain the validity of

their recusation against Judge Miller. His remarks—primarily exhortations directed to the receiver and his counsel that they accelerate their collection activities to obviate criticism from the appellants and others—reflect no biased attitude. Appellants do not deny that the record discloses evidence of mismanagement and fraud by former officers, directors and trustees of the insolvent corporations. Nor can they contest that the receiver and they occupy adverse positions in thirteen lawsuits in which the receiver seeks to collect more than $950,000.00 from some of the appellants as debtors of AL&T.

■■ Though it is true that appellants' petition contained recitals that their proposed collaboration with the receiver would mutually benefit creditors and themselves, the record supports Judge Miller's vigorously expressed determination that he would be foolhardy to afford appellants any further opportunity to manipulate corporate assets or meddle with corporate records. A record which reflects an appropriate ground for a trial court's observations refutes any claim of personal bias. See United States v. Grinnell Corp., 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); Hanger v. United States, 398 F.2d 91 (8th Cir. 1968), cert. denied, 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969); Wolfson v. Palmieri, 396 F.2d 121 (2d Cir. 1968); Tynan v. United States, 126 U.S.App.D.C. 206, 376 F.2d 761, cert. denied, 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111 (1967). We find appellants' charge of bias and prejudice on the part of Judge Miller devoid of legal merit.

What we have said on this issue makes it unnecessary for us to consider this same question raised by appeal No. 19622.

Affirmed.