577 F.2d 600
 SECURITIES & EXCHANGE COMMISSION, Plaintiff-Appellee,
v.
LINCOLN THRIFT ASSOCIATION et al., Defendants,
and
Fred Thender et al., Depositors-Appellants.
 No. 77-2633.
 United States Court of Appeals,
Ninth Circuit.
 June 28, 1978.
 
 Jack Levine, Phoenix, Ariz., for depositors-appellants.
 George G. Yearsich, Honolulu, Hawaii, for plaintiff-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before BARNES and KENNEDY, Circuit Judges, and BARTELS, District Judge.*
 BARNES, Senior Circuit Judge:
 
 
 1
 This is an appeal by creditors who are not parties to the proceedings below, from an Order of the United States District Court for the District of Arizona which denied the appellant creditors' motion to wind up a Securities & Exchange Commission initiated receivership, and to transfer the pending proceedings to a bankruptcy court, or in the alternative, to issue an order requiring an election of a new board of trustees and a creditors' committee to carry out the liquidation of the assets of the companies in the existing receivership.
 
 JURISDICTION :
 
 2
 Before discussing the merits of the case we must dispose of two jurisdictional issues. First, whether the appeal in this case is taken from an appealable interlocutory order under 28 U.S.C. § 1292(a)(2) and second, whether the appellants have standing to raise this appeal.
 
 
 3
 With respect to the first jurisdictional issue, appellees argue that the order appealed from here does not meet the requirements of 28 U.S.C. § 1292(a) (2), and as such, this Court has no jurisdiction to hear an appeal arising therefrom. That section provides in pertinent part that:The courts of appeals shall have jurisdiction of appeals from . . . (i) nterlocutory orders appointing receiverships or to take steps to accomplish the purposes thereof . . . .
 
 
 4
 Appellees argue that the order appealed from here, refusing to transfer the proceedings to a court of bankruptcy or to allow appointment of a creditors' committee and election of a new board of trustees is not a "wind up" order within the meaning of § 1292(a)(2).
 
 
 5
 However, in Securities & Exchange Commission v. Bartlett, 422 F.2d 475, 477 (8th Cir. 1970), the court stated that it did have jurisdiction to review just such an order. It seems to us that the result reached by the Eighth Circuit is correct either because the order, if granted, would have terminated control of the district court's supervision of the receivership and as such is a "wind up" order under § 1292(a)(2), or because the order appealed from is clearly an order which takes "steps to accomplish the purposes" of the receivership within the meaning of that statute. Consequently, we hold that this Court does have jurisdiction to review the order appealed from here.
 
 
 6
 In addition, although neither the appellants nor the appellees raise this issue, there appears to be a serious question as to appellants' standing to appeal. As previously stated, the order appealed from here is an order denying the request of certain creditors either to transfer the proceedings to bankruptcy court, or, in the alternative, to allow appointment of a creditors' committee and election of new members to the board of trustees to supervise the liquidation. The appellants were not named parties to the Securities & Exchange Commission's complaint as filed in the district court below, nor did they become parties by intervention.[1]
 
 
 7
 Generally, a non-party to the proceedings has no right to appeal either an order issued during the action or a final Judgment. Moten v. Bricklayers, Masons and Plasterers International Union of America, 177 U.S.App.D.C. 77, 80, 543 F.2d 224, 227 (1976), United States v. McFaddin Express, Inc., 310 F.2d 790 (2nd Cir. 1962), In re Advocate, 140 F.2d 783, 784 (2nd Cir. 1944). There are, however, certain exceptions. See e. g., United States v. Schiavo, 504 F.2d 1 (3rd Cir. 1974). (Appeal taken from denial of order refusing to vacate oral order enjoining news media representatives from publishing information about murder and conspiracy indictments against accused during perjury trial.), Overby v. United States Fidelity and Guaranty Co., 224 F.2d 158 (5th Cir. 1955). (Acting Secretary of Treasury allowed to appeal from denial of claim of privilege where certain documents had been requested even though not a party to action.), In Re Rose, 86 F.2d 69 (8th Cir. 1936). (Person treated as party to proceeding by court below allowed to appeal.) (dicta).
 
 
 8
 Perhaps the case which is closest to the instant fact situation is West v. Radio-Keith Orpheum Corp., 70 F.2d 621 (2d Cir. 1934).[2] In that case the defendant was a holding company who had been placed in receivership. The receiver gave notice to all creditors that on August 31, 1933, it would apply to the court for instructions. Appellant, a large unsecured creditor, was one of the parties served.
 
 
 9
 The petition filed by the receiver requested, inter alia, that certain portions of the receivership agreement be modified, and for permission to have the subsidiaries refund certain notes and that payments on the notes be immediately sent back to the subsidiaries.
 
 
 10
 On the day of the hearing (in West v. Radio-Keith Orpheum Corp., supra ), the appellant appeared to object to the proposed order. Two hearings were held and all creditors who wished to speak were heard. The court then entered the order appealed from.
 
 
 11
 Judge Learned Hand in holding that a creditor who had appeared to object to the proposed order had standing, stated:
 
 
 12
 . . . (i)t is indeed well settled that generally speaking no person, not a party to a suit, may appeal. . . . The reason for this is that if not a party, the putative appellant is not concluded by the decree, and is not therefore aggrieved by it. But if the decree affects his interests, he is often allowed to appeal. . . . There are many interlocutory decrees passed in such a sequestration suit as this, on which creditors are not cited; it has been the general understanding of the bar that in the ordinary guidance of a receiver they need not be consulted. . . . The receiver did not take that course; it chose to make them parties pro hac vice in order to protect itself; and though we have found little on the point, it seems to us that by so doing it concluded them against further protest. . . . Indeed were it not so, the receiver could get no protection from the court in any way. But if the creditors are concluded by such an order, the reason for refusing them an appeal ends. . . . Such situations are to be distinguished from that in Newberry v. Davison Chemical Co., 65 F.2d 724, 729 (C.C.A. 4). Here the creditors were brought in in invitum; there, though they had avoided all contact with the suit, they tried to affect its course, striving to be, as it were, at once within and without. It seems to us that the appellant has a standing in this court. Id. at 623-24.
 
 
 13
 In the instant case the creditors were served with notice of the liquidation hearing and were entitled to present their claims to the court if they so desired. Thus, there was participation by the creditors in the proceedings as there was in West, supra. In addition, it seems clear that appellants were not appealing the order as disinterested persons but as persons with a legitimate interest in whether the case was transferred to a bankruptcy court or in election of trustees or in appointment of a creditors' committee.
 
 
 14
 The creditors here more properly might have moved to intervene and then appealed from the denial of that motion. Nevertheless, on the authority of the West case we conclude the creditors have standing to raise this appeal in order that we can with finality adjudicate the authority of the receiver to act under the supervision of the district court.
 
 FACTS :
 
 15
 On November 24, 1975, the Securities & Exchange Commission filed a complaint seeking an injunction and appointment of a receiver for Lincoln Thrift Association and U. S. Thrift Association.[3] The basis for the receivership was the alleged violation of the Securities Act of 1933 and the Exchange Act of 1934. The Securities & Exchange Commission further alleged that the companies in question were insolvent. The receivership was initiated by the Securities & Exchange Commission under Section 22(a) of the Securities Act of 1933, as amended (15 U.S.C. § 77v(a)) and Section 27 of the Exchange Act of 1934, as amended (15 U.S.C. § 78aa). The defendants in the action, Lincoln Thrift Association and U. S. Thrift Association, are thrift companies organized under A.R.S. 44-2041, et seq.
 
 
 16
 On the same day that the complaint was filed, the district court judge issued an ex parte temporary restraining order and scheduled a hearing to determine whether the companies should be placed in receivership. Following the hearing before the district court, Continental Service Corporation was appointed temporary receiver and was required, among other things, to take custody and control of all company assets; to conserve and manage the assets for the benefit of the investors; to inquire into the financial condition of the thrift associations, and to present a report to the court as to the status of the companies.
 
 
 17
 On March 15, 1976, the temporary receiver filed a report which established that the companies had participated in numerous fraudulent activities. At the same time an auditor's report was filed by Arthur Anderson and Associates, showing that the thrift associations and their subsidiaries had total assets of $33,028,204 and total liabilities of $69,183,983 thus establishing their insolvency. No motion for permission to file a bankruptcy petition was made by the creditors at this time.[4]
 
 
 18
 On April 22, 1976, a motion for intervention pursuant to Rule 24 of the Federal Rules of Civil Procedure was filed by certain depositors of the Lincoln Thrift Association. The court denied the motion on May 6, 1976, but did allow participation by the moving parties as amicus curiae during part of the proceedings.[5]
 
 
 19
 An order of permanent injunction was entered by consent of all parties on May 7, 1976. Pursuant to the order, trustee receivers were appointed and were given all the powers of corporate directors under state law as might be required to manage the affairs of the companies and to continue the work of the temporary receiver and the accountants. The trustees were also ordered to make a recommendation to the court regarding liquidation, reorganization, consolidation, merger or continuation of the business. The court obtained the concurrence of the depositors who were participating as amicus curiae before entering the order for injunction and placement of the corporation in receivership; however the attorney representing the amicus curiae specifically requested that a representative of these depositors and the other creditors be placed as the fifth and final member of the board of trustees in order to insure protection of the depositor's interests. The court did not obtain the consent or concurrence of any of the creditors here appearing, or of the other creditors. Before developing a final recommendation for disposition of the company, the trustees operated the companies for almost a year. Besides managing the various properties and instituting lawsuits to collect funds owed to the thrift association, the trustees sold numerous assets of the corporations totalling $2,256,608 in amount. The trustees also sold the stock of two subsidiary corporations. All sales subsequently were approved by court order. However, certain of the creditors do not appear to have been given notice of, or to have been involved in, the disposition of the assets, nor have all creditors received notice of all sales.
 
 
 20
 On December 27, 1976, a Motion for Intervention was filed on behalf of the Protective Association of Lincoln Thrift Depositors which represented certain of the depositor investors. The motion requested the court grant intervention on "behalf of all persons not otherwise specifically appearing in the action who are investors or depositors in Lincoln Thrift Association or any affiliate thereof." Id. It also requested that the court appoint additional trustees to represent the interests of the depositors, and that the court issue an order restraining the trustee from further sale of the assets based upon their assertion that the court lacked jurisdiction to sell such assets. The creditors also point out in the motion that over one million dollars in receivers fees, accounting fees and attorneys fees has been expended by the receivers without any of the creditors having any voice as to these expenditures. The court denied this motion for intervention on January 12, 1977.
 
 
 21
 On January 31, 1977, the Protective Association again filed a motion for intervention, or, in the alternative, to transfer the proceedings to bankruptcy court. The district court also denied this motion for intervention, stating that the motion was predicated on a false premise, that liquidation of the companies was taking place. The court noted that no recommendation for liquidation had been made to the court and stated that liquidation was not occurring. This order was issued on February 18, 1977.
 
 
 22
 On March 1, 1977, the trustees filed their report recommending that liquidation of the companies take place on an orderly basis. The Protective Association filed a motion for relief from the denial of their motion. The court denied this motion also.
 
 
 23
 A hearing was held on the trustees' recommendations on May 20, 1977, by court order. All creditors were served with notice of the proceedings and those who responded were allowed to speak at the hearing. On April 4, 1977, five attorneys had been appointed to represent each of the five classes of investors and each of these attorneys also expressed their views to the court. On May 29, 1977, the court approved the plan for liquidation of the companies allowing payment in full of all creditors having claims of $25 or less and authorizing the trustees to make an interim distribution of 10% of claims to all other creditors except subordinated capital holders. Initial distribution of the assets in the amount of $4,600,450 was made on July 25, 1977.
 
 
 24
 On May 31, 1977, appellant Thender, on behalf of himself and 805 other creditors, filed a motion to have the proceedings transferred to a bankruptcy court, or in the alternative, to allow the creditors to elect trustees. This was the first time these appellants had appeared in the action for the purpose of making a motion to the court. The district court denied the motion and an appeal was taken to this Court.
 
 This case presents two issues on appeal:
 
 25
 1. Should the district court have ordered transfer of these proceedings to a court of bankruptcy rather than allow liquidation of the Lincoln Thrift Association and its affiliates under a Securities & Exchange Commission initiated receivership?
 
 
 26
 2. In the event the proceedings should not be transferred to bankruptcy court, should the district court have allowed a creditor's committee to be established and new trustees to be appointed to carry out the approved plan of liquidation?
 
 ANALYSIS:
 Bankruptcy Court:
 
 27
 In this case we confront the complex problem of the extent to which the district court may supervise a Securities & Exchange Commission initiated receivership and specifically, whether its order allowing liquidation was an abuse of discretion and the district court should be compelled to transfer liquidation proceedings in a securities receivership to a bankruptcy court.
 
 
 28
 There are sound policy reasons for allowing liquidation to take place only in a court of bankruptcy. Perhaps the most relevant reason is that the Bankruptcy Act allows the formation of a creditors' committee in liquidation proceedings. The creditors' committee in turn elects the trustee in bankruptcy. (Bankruptcy Act, § 44, 11 U.S.C. § 72; Bankruptcy Rules 204 and 207). The Bankruptcy Act also provides for notice to the creditors or their committee of all sales of property and provides the opportunity for a hearing on the issue of whether a sale should be had. (Bankruptcy Act, § 58, 11 U.S.C. § 94). In addition, the Bankruptcy Act provides an established system[6] for equitable distribution of the assets to creditors. Nevertheless, it is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. International Manufacturing Co. v. Landon, Inc.,327 F.2d 854 (9th Cir. 1964); Securities & Exchange Commission v. Keller Corp., 323 F.2d 397 (7th Cir. 1963). The question to be resolved by this Court, then, is whether the district court judge abused his discretion in failing to grant appellant creditors the relief they sought.
 
 1. Case Law:
 
 29
 In recognition that liquidation of a corporation under a securities receivership may more properly be the subject of a bankruptcy proceeding, this Court has reversed a district court order for liquidation of a corporation in a securities receivership. Los Angeles Trust Deed & Mortgage Exchange v. Securities and Exchange Corporation, 285 F.2d 162, 182 (9th Cir. 1960), cert. denied, 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961). In that case this Court stated that:
 
 
 30
 We are referred to no authority which authorizes the court to require the orderly or any liquidation by the Receiver of LATD, TD&MM, and/or TD&ME (if that corporation should hereafter be included within the receivership), when there has been no bankruptcy proceedings. The trustee in bankruptcy is the person to liquidate, if that be necessary, under the usual and ordinary supervision of a Referee in Bankruptcy.
 
 
 31
 The trial court has found insolvency in the bankruptcy sense, but there is no apparent reason here why the violation of the Securities Act and the Securities Exchange Act should lead to a different type of final liquidation than that which is had for the normal corporate bankrupt. In true bankruptcy, procedures are better geared for creditors and depositors to give them a day in court and protect their rights.
 
 However, this Court also went on to state:
 
 32
 . . . We do not hold that liquidation cannot ever be effected. Possibly some circumstances might arise which would justify such a result. And, it could even eventuate in this case, but we hold "not now." Id.
 
 
 33
 Certain factors which the Court considered in Los Angeles Trust Deed make that case distinguishable from the instant fact situation. For example, in Los Angeles Trust Deed, the corporation probably was not insolvent. See : the earlier opinion of Los Angeles Trust Deed & Mortgage Exchange v. Securities and Exchange Commission, 264 F.2d 199 (9th Cir. 1959). In the second Los Angeles Trust Deed, we stated that liquidation appeared to be imposed as a "special additional penalty". Los Angeles Trust Deed & Mortgage Exchange v. Securities and Exchange Commission, 285 F.2d 162, 182 (9th Cir. 1960), cert. denied, 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961).[7] In the instant case, the record discloses evidence of the defendant company's insolvency, and liquidation does not appear to have been imposed to penalize the corporation but because it was the appropriate remedy.[8]
 
 
 34
 Other courts have held that a liquidation proceeding is "more properly" the subject of a bankruptcy court. See: Esbitt v. Dutch American Mercantile Corp., 335 F.2d 141 (2d Cir. 1964). However, the court in Esbitt did not reverse the district court order, stating only that liquidation had proceeded too far to justify placing the liquidation proceedings in a bankruptcy court. Id. at 143.[9] The court also specifically noted that:
 
 
 35
 . . . it would apparently not be in the interests of the parties to direct that further proceedings be diverted into bankruptcy channels. Id.
 
 
 36
 The most recent case involving the issue of transferring a Securities & Exchange Commission liquidation proceeding to the jurisdiction of the bankruptcy court is Securities and Exchange Commission v. Bartlett, 422 F.2d 475 (8th Cir. 1975). In that case the court upheld the district court's order refusing to vacate a receivership, noting that the receiver had already made substantial progress toward liquidating the corporation and that the district court had ordered an early pro rata distribution of the assets. Id. at 480. While these two factors are present in the instant case, there is a substantial distinction between Bartlett and the present appeal. In Bartlett, the appellants were the directors and trustees of the corporations in receivership. Here, of course, the appealing parties are the creditors of the companies in receivership. Thus, the positions of the appellants in each of the two lawsuits are substantially different and the equities of each case are different as well. In Bartlett, the parties appealing the motion to vacate the receivership were members of the various corporations who had participated in fraudulent activities which were violations of the securities laws. In this case, the parties who are appealing are creditors who are not guilty of any fraudulent conduct, but who have tried repeatedly to participate in the proceedings through motions for intervention. Further, in Bartlett the court specifically found that liquidation was in the best interests of the creditors. 422 F.2d at 479. Here, the creditors claim that their best interests are being ignored.
 
 
 37
 Appellees also argue that the presence of amicus curiae counsel and the fact that the creditors were given notice of the liquidation proceedings were sufficient to protect the interests of the creditors. There are two problems with this argument. First, neither the appellants nor the other creditors were represented by amicus curiae at all times during the proceedings. Second, notice does not appear to have been given to each of the creditors as assets were sold prior to the trustees' recommendation of liquidation. This safeguard would have been present in a bankruptcy court. Third, the presence of amicus curiae in the proceedings does not allow appellants the same procedural rights that an intervenor would have.[10]
 
 
 38
 Thus, the question before us is a close one, and seems primarily dependent upon the facts of the case,[11] with particular emphasis on how far the liquidation has progressed.
 
 
 39
 2. Discretion;
 
 
 40
 Appellees also argue that the judge had discretion to refuse to transfer the proceedings to a court of bankruptcy because appellants could not have filed bankruptcy proceedings as a matter of right. They argue that although Section 2(a)(21) of the Bankruptcy Act, 11 U.S.C. § 11(a)(21) empowers a bankruptcy court to
 
 
 41
 Require receivers or trustees (not) appointed in proceedings not under this title, * * * authorized to take possession of or to liquidate a person's property to deliver the property * * * to the receiver or trustee appointed under this title * * *,
 
 
 42
 that
 
 
 43
 such delivery and accounting shall not be required * * * if the receiver or trustee was appointed * * * more than four months prior to the date of bankruptcy.
 
 
 44
 Although the above section does not apply to Chapter Proceedings X and XII, it does apply in a straight bankruptcy proceeding, the appropriate method for liquidation of a company under the Bankruptcy Act.
 
 
 45
 The district court judge may have had discretion to deny the motion to vacate the receivership and to transfer the proceedings to bankruptcy, because appellants could not have filed as a matter of right. The question remaining is whether under the facts of the instant case he properly exercised his discretion.
 
 3. Effectuation of the Order:
 
 46
 Even if we were to find that appellants request that the proceedings be transferred to bankruptcy court should be granted, it is not clear whether this Court has any method of effecting the result. Appellants have suggested that this Court order the district court to order the trustees as the companies' managers to file bankruptcy.
 
 
 47
 The Second Circuit has stated specifically in a 1925 case, the only reported case directly on point, that the district court did not have the power to order a receiver to file voluntary bankruptcy. However, the corporation in that case did not appear to be insolvent as in the instant appeal. See: Manhattan Rubber Manufacturing Co. v. Lucey Manufacturing Co., 5 F.2d 39 (2d Cir. 1925). In addition in a later case the Second Circuit refused to specifically overrule Manhattan Rubber but indicated that they might have done so if the issue had been briefed. Esbitt v. Dutch-American Mercantile Corp., 335 F.2d 141 (2d Cir. 1964). However, because of the result reached in the instant appeal we find it unnecessary to decide this issue.
 
 
 48
 APPOINTMENT OF ADDITIONAL TRUSTEES OR CREDITORS COMMITTEE:
 
 
 49
 Neither party to this action cites any case which discusses whether this Court has the authority to actively enter the district court proceeding and give specific orders to the district court as to the method of conducting the equity receivership. We have not been any more successful than either of the parties in finding a case in point. It does, however, seem that it would be a cumbersome situation at best were this Court to actively intervene in the operation of the receivership, a position which should be avoided. In absence of a clear abuse of discretion by the trial court we decline to grant the requested relief.
 
 CONCLUSION:
 
 50
 Because the district court does have "broad powers and wide discretion to frame the scope of appropriate equitable relief", Securities & Exchange Commission v. United Financial Group, Inc., 474 F.2d 354, 358-59 (9th Cir. 1973) and because the district court does not appear to have abused its discretion, Id. at 358, the order of the district court refusing to transfer the proceedings to bankruptcy or to appoint a new board of trustees should be affirmed.
 
 
 51
 It would be impractical at this point to order the district court to turn the proceedings over to a bankruptcy court because of the court's intimate knowledge of the factual data relevant to liquidation; the receiver's expertise developed in making his recommendation that the companies be liquidated; and the fact that an initial distribution of $4,600,450 has already been made as well as payment in full to all creditors having claims of $25 or less. Newly instituted bankruptcy proceedings would result in expending additional expenses and fees over and beyond the over one million dollars already paid out.
 
 
 52
 Finally, this Court should not place itself in the position of second-guessing a district court judge who had an opportunity to acquire substantial knowledge of the facts and to evaluate the various legal positions after hearing their merits put forth by the various parties, particularly when there appears to be no clear abuse of discretion.
 
 
 53
 Our decision is to a large extent controlled by the consideration that the liquidation proceedings were in an advanced stage before appeal was brought to this Court. We do not, therefore, view this case as a precedent for approving receivership liquidations under the supervision of the district court rather than under the jurisdiction of the court in bankruptcy. If the issue arises in future cases, the district court should, at an early stage in the liquidation, set forth in express terms the justification for retaining its equity jurisdiction, indicating why the exercise of its jurisdiction is preferable to a liquidation in bankruptcy court.
 
 
 54
 Although the trial court did not allow intervention by the creditors at various preliminary stages of the proceedings as it perhaps should have, the denial of intervention is not the issue which the parties can or do raise on this appeal. Given the factors discussed above, and because the trial judge did appoint an amicus curiae to represent the creditors in the proceedings; did provide notice to creditors of the proposed litigation; and did conduct a full hearing on the issue of liquidation; it cannot be said that the judge clearly abused his discretion, either in failing to transfer the liquidation to a bankruptcy court, or to conduct an election for new trustees and appoint a creditors' committee.
 
 
 55
 The order of the district court is AFFIRMED.
 
 
 
 *
 The Honorable John R. Bartels, Senior United States District Judge, Eastern District of New York, sitting by designation
 
 
 [1]
 Under Rule 24 of the Federal Rules of Civil Procedure, anyone who wishes to be a party to the action may bring a motion to intervene. Generally, the district court's denial of the motion to intervene is appealable if intervention was a matter of right and if intervention is permissive only, the order is appealable if the court has abused its discretion. See: Van Hoomissen v. Xerox Corp., 497 F.2d 180 (9th Cir. 1974)
 
 
 [2]
 While West v. Radio-Keith Orpheum Corp., supra was decided before the advent of the Federal Rules of Civil Procedure, it is cited as good authority by Judge Craven in his concurring and dissenting opinion in Central South Carolina Chapter, Society of Professional Journalists, Sigma Delta Chi v. United States District Court for the District of South Carolina, 551 F.2d 559 (4th Cir. 1977). But cf.: Spangler v. Pasadena City Board of Education, 552 F.2d 1326 (9th Cir. 1977) in which parents, not previously parties to a school desegregation case, filed an affidavit in opposition to the proposed plan. This Court of Appeals refused to order joinder of the parties on appeal indicating that the proper remedy was for the parents to have moved to intervene in the district court below. Further, this Court held that in absence of a motion to intervene, the district court's grant of the requested relief was error for lack of jurisdiction below
 
 
 [3]
 Subsequently, certain of the affiliates and subsidiaries of Lincoln Thrift and United Thrift were named as defendants
 
 
 [4]
 Because a stay was in effect, leave of court would have been required to file a bankruptcy petition
 
 
 [5]
 This participation was subsequently terminated by court order on January 25, 1977, substantially prior to entry of the order appealed from here
 
 
 [6]
 In this case, creditors who are owed twenty-five dollars or less have already been paid in full. Thus, other creditors with larger claims than twenty-five dollars may receive a smaller amount
 
 
 [7]
 But see: Securities and Exchange Commission v. Fiscal Fund, Inc., 48 F.Supp. 712 (D.C.Del.1943) (holding that the Securities & Exchange Commission does have the power to liquidate a solvent corporation)
 
 
 [8]
 The possibility of placing the companies in a receivership under Chapter X of the Bankruptcy Act was considered and abandoned as being infeasible
 
 
 [9]
 It should be noted that both Los Angeles Trust Deed and Esbitt are distinguished from the instant case. In Los Angeles Trust Deed the appellants are the corporation themselves and the individual participants; in Esbitt, the appellants are debtors who owe the money to the corporation and are raising the district court's lack of jurisdiction as a defense
 
 
 [10]
 Specifically, the amicus curiae did not have the right to be heard on matters pertaining to the administration of the receivership or the right to appeal from orders or judgments of the court
 
 
 [11]
 For a discussion of the problems of equity receiverships, see : Kaplan, "The Courts and Equity Receiverships," Vol. 1, No. 3, Los Angeles Lawyer, 3 (May, 1978). Of particular note are the author's observations that:
 The powers granted the receiver should generally be fashioned to anticipate, as best possible, the needs of the particular case. There is rarely a clear answer to disputes concerning the specific exercise of such powers. The precedent that does exist is often not readily available in the form of reported decisions, but rather emanates from rulings in pre-trial proceedings. . . .
 The power to liquidate the assets of the defendant would probably not be given to the receiver, at least until a decision on the merits of the main lawsuit. Id. p. 38.
 The author also discusses the relevant cases pertaining to the powers of the court in an equity receivership. Mentioning Los Angeles Trust Deed Corporation, 285 F.2d 162 (9th Cir. 1960), cert. denied, 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961) discussed above, he also cites Securities & Exchange Commission v. United Financial Group, Inc., 474 F.2d 354 (9th Cir. 1973); see also, Securities & Exchange Commission v. United financial Group, Inc., 404 F.Supp. 908 (D.Or.1975). In the earlier Ninth Circuit case, an appeal had been taken only from the order granting a preliminary injunction and appointing a receiver, not from the order approving liquidation. This Court affirmed the district court order stating that "(t)he district court has broad powers and wide discretion to frame the scope of appropriate equitable relief." 474 F.2d at 358, citing International Manufacturing Co. v. Landon, Inc., 327 F.2d 854 (9th Cir. 1964), Securities & Exchange Commission v. Keller Corp., 323 F.2d 397 (7th Cir. 1963). Following the appeal to this Court, the district court published an opinion in which it indicated that the receivership had resulted in continuing liquidation, United Financial Group, Inc., supra, 404 F.Supp. at 910. Although the Order, entered by means of a consent judgment, apparently stated that liquidation was to occur "as if 'the entire estate were in bankruptcy,' " the equity receivership was permitted to proceed with the liquidation. Mr. Kaplan suggests that "the equity receivership was the most appropriate forum, in part because it had been effectively administering the assets for a period of time and was thoroughly familiar with the claims to them," a factual situation similar to those existing in this case.