In re BEEF INDUSTRY ANTITRUST LITIGATION.

**Neal SMITH et al., Plaintiffs-Appellants,**

v.

**The NATIONAL PROVISIONER, INC., et al., Defendants-Appellees.**

No. 78–3344.

United States Court of Appeals, Fifth Circuit.

Feb. 2, 1979.

Stanley M. Brand, General Counsel to the Clerk, U. S. House of Representatives, Washington, D. C., Steven R. Ross, Asst. Counsel to the Clerk, U. S. House of Representatives, Washington, D. C., John M. Fitzgibbons, Sp. Counsel, Committee of Small Business, U. S. House of Representatives, Washington, D. C., for plaintiffs-appellants.

Strasburger & Price, Wilson W. Herndon, Dallas, Tex., Kasmir, Willingham & Krage, Dallas, Tex., for defendant-appellee Liaison Counsel for Food Retailers in the District C.

Kirkland & Ellis, Daniel Edelman, Fred H. Bartlit, Jr., Jeffrey S. Davidson, Chicago, Ill., Newman, Shook & Newman, Lawrence G. Newman, Dallas, Tex., for The National Provisioner, Inc.

Edward W. Rothe, James T. Malysiak, Chicago, Ill., for Iowa Beef Processors, Inc.

John C. Dods, Kansas City, Mo., for MBPXL Corp.

Roger E. Podesta, New York City, for Flavorland Industry, Inc.

Edward C. Stringer, St. Paul, Minn., for Spencer Foods, Inc.

Before THORNBERRY, FAY and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The chairmen of two subcommittees of the House of Representatives and the Clerk of the House [1] seek to intervene in an antitrust suit pending in district court among private litigants in order to gain access to documents subpoenaed by the subcommittees from a party to the litigation. The documents were obtained by the subpoenaed party through discovery. Because the district court refused to modify its standing protective order or to allow the representatives of the party under subpoena to comply, the chairmen have appealed to this court. On a motion to dismiss, we must consider whether the action is properly before us.

■ There can be no doubt that the privilege of confidentiality, now embodied in Rule 26(c), Federal Rules of Civil Procedure, is a creation of Congress, just as are the rules relative to the procedure for obtaining subpoenas, e. g., F.R.C.P. 45, and for intervention in pending lawsuits, F.R.C.P. 24. See 28 U.S.C. § 2071. The issue before us does not relate to the power of Congress but to whether Congress has acted. Cf. *United States v. Gustin-Bacon Division, Certain-Teed Products Corp.,* 10 Cir. 1970, 426 F.2d 539, 542, *cert. denied,* 400 U.S. 832, 91 S.Ct. 63, 27 L.Ed.2d 63. It is respect for the duties and power of Congress, as set forth in Article I of the Constitution, that requires us to inquire whether Congress has authorized what these congressmen, as chairmen of their respective subcommittees, seek to do. Congressional committees are themselves the offspring of Congress; they

1. Congressman Neal Smith is the Chairman of the Subcommittee on SBA and SBIC Authority and General Small Business Problems of the Committee on Small Business. Congressman John E. Moss is Chairman of the Subcommittee on Oversight and Investigations of the Committee on Interstate and Foreign Commerce. Hon. Edmund L. Henshaw, Jr. is the Clerk of the House. His interest in the case is not apparent from the briefs. *But see* Rule III (3), Rules of the House of Representatives for the 95th Congress, H.R.Doc.No.94–663, 94th Cong., 2d Sess. (1977) (Clerk to affix the seal of the House to all subpoenas).

have only those powers authorized by law; they do not have an unlimited roving commission merely by virtue of their creation and existence to ferret out evil or to uncover inequity. If Congress as a whole has created a privilege, then it is the duty of the court to protect it against violation even by a committee of that Congress. Such judicial action manifests respect for the law-making authority of the legislative branch of the government, not a lack of cooperation with its investigative efforts.

The appeal is related to a pending private antitrust suit, *In re Beef Industry Antitrust Litigation,* 457 F.Supp. 210 (N.D.Tex.). In October 1976, the district court issued an extensive protective order based on Rule 26(c), F.R.C.P. The order allows documents and deposition testimony to be designated as confidential, and provides in part:

> Any information designated as confidential information shall not be made available to persons other than qualified persons or the party who produced the confidential information.

An exception is made if the court orders disclosure, or if the party designating the information as confidential consents to disclosure.

Two subcommittees of the House of Representatives, the Subcommittee on Oversight and Investigations of the Committee on Interstate and Foreign Commerce, and the Subcommittee on SBA and SBIC Authority and General Small Business Problems of the Committee on Small Business, learned of the existence of the antitrust suit in the course of investigating the domestic beef industry. Each of the subcommittees issued subpoenas to attorneys representing one of the plaintiffs, the Meat Price Investigators Association, and to an officer of the Association, demanding documentary material obtained by MPIA from other parties during the course of discovery in the antitrust suit. The validity of the subpoenas was not challenged; however, because some of the material requested by

the subcommittees was subject to the district court's protective order, MPIA moved for the court's permission to comply with the congressional subpoenas. The court denied permission, but without prejudice to the right of the subcommittees to ask for relief on their own behalf. The chairmen of the two subcommittees did not seek to intervene in the suit; instead they sought leave to file a motion to grant MPIA's request, or for clarification or modification of the protective order. The court allowed the motion to be filed, but denied the relief requested. The two chairmen then appealed the trial court's denial of their motion. No party to the litigation joined in the appeal.

■ Before assessing the respective positions of the litigants, it is appropriate to consider the effect of the chairmen's failure to comply with the procedure for intervention established by Rule 24(c), F.R.C.P.[2] Some courts have held that it is reversible error to conduct any proceedings at the behest of parties who have failed to intervene formally pursuant to Rule 24(c). *E. g., Spangler v. Pasadena City Board of Education,* 9 Cir. 1977, 552 F.2d 1326. *See also Moten v. Bricklayers, Masons and Plasterers International Union,* 1976, 177 U.S.App. D.C. 77, 543 F.2d 224. Other courts have been willing to ignore technical defects in the intervention process. *E. g., United States v. Louisiana,* 5 Cir. 1976, 543 F.2d 1125; *Smartt v. Coca-Cola Bottling Corp.,* 6 Cir. 1964, 337 F.2d 950, *cert. denied,* 1965, 380 U.S. 934, 85 S.Ct. 941, 13 L.Ed.2d 822. Occasionally, courts have been willing to overlook a total failure to comply with Rule 24(c). *E. g., SEC v. Lincoln Thrift Association,* 9 Cir. 1978, 577 F.2d 600; *Roach v. Churchman,* 8 Cir. 1972, 457 F.2d 1101.

The Fifth Circuit has been lenient in hearing the appeals of nonparties. In *Overby v. United States Fidelity and Guaranty Co.,* 5 Cir. 1955, 224 F.2d 158, 162, we allowed the Acting Secretary of the Treasury, "whether or not he was formally recognized

---

**2.** This issue was not discussed by the parties; however, we consider it of sufficient importance to raise sua sponte. *See SEC v. Lincoln*

*Thrift Association,* 9 Cir. 1978, 577 F.2d 600, 602.

as a party to the suit," to appeal an order requiring the production of bank records in the bank's suit against its surety company because the Secretary had asserted that the records were privileged. A few years later, in *Caswell v. Manhattan Fire & Marine Insurance Co.*, 5 Cir. 1968, 399 F.2d 417, we held that a nonparty could appeal the denial of his motion to quash a subpoena. Finally, in *United States v. United Fruit Co.*, 5 Cir. 1969, 410 F.2d 553, *cert. denied*, 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71, we allowed a nonparty to appeal the denial of its motion for permission to inspect and copy progress reports and programs sealed under a protective order. Although the panel considered whether it had jurisdiction over the case, it did not examine whether the nonparty had any right to file a motion with the district court, or to appeal without complying with Rule 24(c).

There is no question that the procedurally correct course for the chairmen would have been first to obtain status in the suits as intervenors. *See SEC v. Lincoln Thrift Association, supra*, 577 F.2d at 603. However, we note that the district court denied the plaintiffs' motion for leave to comply with the congressional subpoenas, "without prejudice to the right of the Committee and its counsel to appear before this court and ask for the relief that it seeks." This could be construed as an invitation to the chairmen to file their motion without first seeking formal intervention; indeed, the appellees use the words "permitted to intervene" when referring to the appellants' status in the motion to dismiss. *See West v. Radio-Keith-Orpheum Corp.*, 2 Cir. 1934, 70 F.2d 621, 624, cited in *SEC v. Lincoln Thrift Association, supra*, 577 F.2d at 602 (creditors had standing because they were "brought in in invitum"). *Compare United States v. United Fruit Co., supra*, 410 F.2d at 554 ("The [protective] order provided that third parties could not, without an express order of the court inspect or copy any document submitted. . . .."); *Roach v. Churchman, supra*, 457 F.2d at 1104 (affording relief to a participant without formally naming it as a party deemed "equivalent to authorizing" intervention).

In view of our lenience in the past and the fact that the district court's acts might be considered equivalent to authorizing intervention, we will not dismiss for the failure to comply with Rule 24(c), but we will assume that the district court implicitly authorized the chairmen to intervene. However, we reiterate that a formal motion for intervention should have been filed pursuant to Rule 24(c). Future litigants should not attempt to use this opinion to circumvent the clear requirements of the rule. We now turn our attention to the issues raised by the litigants.

█ In response to the appeal filed by the chairmen, one of the defendants, The National Provisioner, Inc., filed a motion to dismiss because neither subcommittee had obtained authorization from the House of Representatives before it sought to file the motion in the district court; we note ourselves that neither has obtained authority to appeal. The premise of the motion to dismiss is that authorization is required by Rule XI, cl. 2(m)(2)(B) of the Rules of the House of Representatives for the 95th Congress, H.R.Doc.No.94–663, 94th Cong., 2d Sess. (1977), before a congressman may appear in court on behalf of a committee or subcommittee; that rule provides:

> Compliance with any subpena [sic] issued by a committee or subcommittee . . . may be enforced only as authorized or directed by the House.

The position of the chairmen is that authorization under this rule is not required both because they seek modification of a court order rather than judicial enforcement of a congressional subpoena and also because they do not desire to retain outside counsel to represent their subcommittees in court. However, they point to no other rule and to no statute that confers general authority to prosecute or intervene in law suits or undertake other actions in the courts.

While the opinion of two congressmen on the applicability of a rule of the House is certainly entitled to serious consideration by this court, we note that legislative committees and congressmen have been held to

observance of the rules of Congress and that those rules are judicially cognizable. *Yellin v. United States,* 1963, 374 U.S. 109, 114, 83 S.Ct. 1828, 1832, 10 L.Ed.2d 778, 783. *See also Christoffel v. United States,* 1949, 338 U.S. 84, 69 S.Ct. 1447, 93 L.Ed. 1826. In interpreting the meaning and scope of the House rule, it is appropriate to examine congressional practice under that rule. *See Yellin v. United States,* 374 U.S. at 116–17, 83 S.Ct. at 1833, 10 L.Ed.2d at 785.

One of the chairmen before us, Representative John E. Moss, has previously intervened on behalf of the Subcommittee on Oversight and Investigations in a then-pending case, *Ashland Oil, Inc. v. FTC,* D.D. C.1976, 409 F.Supp. 297, *aff'd,* 179 U.S.App. D.C. 22, 548 F.2d 977 (per curiam). That case arose when Ashland Oil sought to enjoin the Federal Trade Commission from transferring secret information obtained from Ashland (apparently not in the course of litigation) to the Subcommittee on Oversight and Investigations of the Committee on Interstate and Foreign Commerce at the request of Subcommittee Chairman Moss. A week after Ashland Oil obtained a temporary restraining order, the subcommittee authorized a subpoena for the documents. *Id.* at 301. On the same day, Congressman Moss filed a resolution for authorization from the House to intervene with special counsel in the suit that Ashland Oil had filed seeking to enjoin the FTC from transferring the documents to the subcommittee.[3] H.R.Res. 899, 94th Cong., 1st Sess. (1975). *See* 121 Cong.Rec. 38213.

The resolution passed by the House authorized Congressman Moss to "intervene and appear" in the pending action in district court on behalf of the committee. The report accompanying the resolution, H.R. Rep.No.94–756, explained why the resolu-

tion was necessary. It noted, "The Supreme Court has ruled that a committee (or subcommittee) must have specific authority from the appropriate House in order to undertake *any court action. Reed v. County Commissioners,* 277 U.S. 376, 48 S.Ct. 531, 72 L.Ed. 924 (1928)."[4] (Emphasis supplied.) H.R.Rep.No.94–756 at 22. The resolution was approved with unanimous consent. 121 Cong.Rec. 41707 (1975). After obtaining authorization, Congressman Moss sought and was granted leave to intervene in the suit pursuant to F.R.C.P. 24(a). 409 F.Supp. at 301.

In *Ashland Oil,* Congressman Moss was not seeking to obtain judicial enforcement of a congressional subpoena; he intervened to obtain the dissolution of the temporary restraining order that prevented the FTC from sending requested documents to his committee, and to oppose any temporary or permanent injunction that Ashland Oil might have sought to prevent the transfer of the documents for a longer period. Moreover, although special counsel was authorized in H.R.Res. 899, that was not the sole purpose of the resolution; it is clear that the resolution was submitted and passed because the Congressman himself stated that he needed such authorization. *See, e. g.,* H.R.Rep.No.94–756 at 20–21. Neither the resolution nor the accompanying report provide any basis to support the view that under the House rules authorization is required only when special counsel is to be retained.

Thus based on the practice in the House of Representatives, as revealed by Congressman Moss's actions in the *Ashland Oil* case, it is apparent that Rule XI, cl. 2(m)(2)(B) requires House authorization not only for direct enforcement of a subpoena

---

**3.** Rule XI, cl. 2(m)(2)(B) of the Rules of the House of Representatives for the 94th Congress, H.R.Doc.No.93–416, 93d Cong., 2d Sess. (1975) is identical to the previously quoted rule of the 95th Congress.

**4.** In *Reed v. County Commissioners,* 1928, 277 U.S. 376, 48 S.Ct. 531, 72 L.Ed. 924, the Supreme Court dismissed a suit brought to compel the production of documents because the

members of the committee were not specifically authorized by the Senate to bring suit. Specific authorization has also been required in the context of prosecutions for contempt of Congress. *Cf. Gojack v. United States,* 1966, 384 U.S. 702, 716, 86 S.Ct. 1689, 1698, 16 L.Ed.2d 870, 880 ("the line of authority from the House to the Committee and then to the subcommittee must plainly and explicitly appear").

but also in any instance when a House committee seeks to institute or to intervene in litigation and, of course, to appeal from a court decision, particularly when the purpose is, as here, to obtain the effectuation of a subpoena. Congressmen Smith and Moss failed to obtain a House resolution or any other similar authority before they sought to intervene in the beef industry case. If every subcommittee of the Congress is to have inherent authority to intervene in pending suits, to file motions in litigation throughout the nation and to prosecute appeals from district court decisions, a general grant of authority by statute or resolution would appear appropriate. In the absence either of such a general authorization or specific authorization for the actions here taken, the motion to dismiss the appeal is granted.[5]

---

**5.** In view of our disposition of the case, we need not consider, sua sponte, the question of the mootness of the congressional subpoenas. Since the 95th Congress has adjourned, the subpoenas may no longer be in force. *See Eastland v. United States Servicemen's Fund,* 1975, 421 U.S. 491, 512, 95 S.Ct. 1813, 1826, 44 L.Ed.2d 324, 341. Neither need we consider the validity of the technical objection that, in filing the appeal, the chairmen appeared to act individually and not in their official capacities on behalf of their committees. For the purpose of this opinion, we have assumed, without deciding, that Congressmen Smith and Moss are acting on behalf of their respective committees.