No. 82-190

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

SCHULZ, DAVIS & WARREN, a partnership, et al.,

Plaintiffs and Respondents,

-vs-

GEORGE P. MARINKOVICH, et al.,

Third-Party Plaintiff,

---

GEORGE P. MARINKOVICH, et al.,
                Third Party Plaintiff,
        -vs-

M & M ENTERPRISES, a Mont. Corp.,
                Third Party Defendant.

---

DOMINIC C. ORI, and individual and
PATRICIA M. ORI, individually and as
a shareholder and liquidating director of M & M ENTERPRISES,
                Third Party Plaintiffs and Cross-Complainant,
        -vs-

M & M ENTERPRISES, a Mont. Corp., Third Party Defendant,
        and
GEORGE P. MARINKOVICH, et al., Cross-Defendants.

---

Appeal from:   District Court of the Fifth Judicial District,
               In and for the County of Beaverhead, The Honorable
               Frank Blair, Judge presiding.

Counsel of Record:

        For Appellant:

                W. G. Gilbert, III, Dillon, Montana
                Berg, Coil, Stokes & Tollefsen, Bozeman, Montana

        For Respondent:

                Max Hansen, Dillon, Montana

---

                        Submitted on Briefs:  September 2, 1982

                                Decided:  February 24, 1983

Filed:   FEB 24 1983

_Ethel M. Harrison_
                        Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appeal by George T. Marinkovich, Ann C. Marinkovich, and M & M Enterprises, from a judgment entered by the District Court, Fifth Judicial District, Beaverhead County, sitting without a jury, awarding wage claims, penalties and attorneys fees to various parties in the action, and from a judgment of general damages against George T. Marinkovich and Ann C. Marinkovich, in favor of Patricia M. Ori.

M & M Enterprises was incorporated in 1969. It had four stockholders, each with 125 shares of stock, namely George T. Marinkovich, Ann C. Marinkovich, Allie McFadden, and her daughter, Patricia Ori. Upon the subsequent death of Allie McFadden, Patricia Ori succeeded to Allie's 125 shares.

The articles of incorporation of M & M Enterprises provided for four directors. Each of the stockholders was elected a director. The bylaws provided for officers, a president, two vice presidents, and a secretary-treasurer. In the beginning, George T. Marinkovich was president, Ann C. Marinkovich and Allie McFadden were vice presidents, and Patricia M. Ori acted as secretary.

After the death of Allie McFadden and the devolution of her corporate stock to Patricia Ori, George T. Marinkovich and Ann C. Marinkovich, his wife, each had 125 shares, and Patricia Ori had 250 shares. The vacancy in the office of the director was not filled after Allie McFadden's death nor the vacant office of vice president. Thus at the time of the events which give rise to this lawsuit, although Patricia Ori held in her name one-half of the outstanding shares of M & M Enterprises, she was outvoted on the board of directors two-to-one.

The principal asset and business of M & M Enterprises was the purchase and operation of the Andrus Hotel in Dillon. Until the hotel was sold by the corporation in 1979, the directors of M & M

2

Enterprises, and as well Dominic C. Ori, Patricia's husband, acted in various ways to look after the property, to maintain it, to enter into leases, and even to operate it as a business in between lessees. Nothing in the corporate records, or the court file, indicates that any corporate action was taken to provide for payment to any of the directors for such services to the corporation.

With the sale of the hotel on June 22, 1979 to one Douglas Harvey, the stockholders met and adopted a plan of complete liquidations and dissolution, to accord with section 337 of the Federal Internal Revenue Code. (26 U.S.C. 337.) The plan of liquidation adopted provided that

> ". . . from and after the date of sale and transfer of the assets of the corporation, the corporation shall not engage in any business activities. The directors then in office, and at their pleasure, the officers shall continue in office solely for the purpose of winding up the business and affairs of the corporation, and after such date shall not take such action whatsoever which is or shall be construed to be inconsistent with the status of liquidation, and such status shall be continued until the date of the dissolution of the corporation."

In connection with the sale of the hotel and the plan of liquidation, the Dillon law firm of Schulz, Davis and Warren was designated as the corporate trustee to hold the proceeds from the sale for the payment of the corporation debts and final disbursement among the stockholders in proportion to their ownerships.

On April 2, 1980, the liquidating directors of the corporation approved payment of a wage claim presented by George T. Marinkovich for $2,142.75, against the corporation. The directors, by a two to one vote, rejected the claim of Dominic C. Ori for $500 for services to the corporation and the claim of Patricia M. Ori for services performed by her mother Allie McFadden for $1,600. Thereafter the law firm as corporate trustee, was given conflicting directions from the liquidating directors for disbursal of the remaining corporate funds. As a result, the law firm as a stakeholder filed this

interpleader action on April 15, 1980, naming as defendants the individual directors of M & M Enterprises.

George T. Marinkovich and Ann C. Marinkovich filed their answer to the complaint and interpleader, asserting the wage claim for George T. Marinkovich, and denying any wage claims should be paid to Dominic C. Ori or Patricia Ori as successor to Allie McFadden. In addition, George Marinkovich filed a third party complaint against third party defendant M & M Enterprises for his wage claim of $2,142.75, plus penalties and attorneys fees.

Dominic Ori and Patricia M. Ori filed a third party complaint and cross-complaint against M & M Enterprises for their respective wage claims, and against George and Ann Marinkovich for relinquishing the corporate ownership to stained glass windows which had been removed from the hotel building and delivered to Douglas Harvey.

The Marinkovichs filed an answer as third party defendants in effect denying generally the claims of the Ori's for wages, and denying any responsibility in damages for the relinquishment of the stained glass windows. In this pleading, the Marinkovichs did not raise the issue of whether Dominic C. Ori was properly a party to the action.

M & M Enterprises filed an answer to the Ori cross-complaint, in effect a general denial of the claims of the Ori's and a claim for attorneys fees.

When the cause came on for trial, counsel for the Marinkovichs raised for the first time whether Dominic C. Ori was a proper party in the action, since he had not obtained permission for leave to intervene before joining in his third party complaint. The District Court denied the motion to dismiss Dominic C. Ori as a party.

4

After trial before the court, sitting without a jury, the court made findings of fact, conclusions of law, and entered judgment as follows:

For George T. Marinkovich in the sum of $2,142.75 wages, attorneys fees of $2,337.63, and a penalty in the sum of $2,142.75;

For the estate of Allie K. McFadden, the sum of $1,600, attorneys fees of $1,291.70, and a penalty of $1,600;

For Dominic C. Ori, the sum of $500 for wages, $1,291.70 for attorneys fees, and a penalty of $500;

A further judgment in favor of Dominic C. Ori in the sum of $5,000; and a judgment in favor of Patricia M. Ori, against George T. Marinkovich and Ann C. Marinkovich for $3,000. Thereafter the District Court denied post-trial motions made by the Marinkovichs and this appeal followed.

The issues raised by the appellants Marinkovich are these:

1.  Whether Dominic C. Ori is a proper party to the action?

2.  Whether the claim of Allie K. McFadden was barred by the statute of limitations?

3.  Whether the District Court had the power to overrule the decision of the liquidating directors with respect to the wage claims of Dominic and Patricia Ori?

The objection against Dominic Ori being regarded as a proper party is grounded upon his failure to procure an order granting him leave to intervene in the action as a co-plaintiff with Patricia Ori, who was already a party to the action.

Rule 24(c), M.R.Civ.P., requires a person desiring to intervene to file and serve a motion for leave to intervene upon the parties, stating the grounds therefor, accompanied by a pleading setting forth the claim or defense for which the intervention is sought. Dominic Ori made no such motion, but filed in the action a third party complaint as a co-plaintiff with Patricia Ori. When M & M

5

Enterprises responded to the Ori joint third party complaint, it moved to dismiss the complaint and cross-complaint merely upon general grounds. The Marinkovichs response to the joint third party cross-complaint was "Answer to Cross-Complaint of Patricia M. Ori." No mention was made in the pleadings by the Marinkovichs then or later that made objection to the presence in the case of Dominic Ori as a party. When M & M Enterprises answered the Ori third party complaint, it was in the nature of a general denial, raising the defense of the statute of limitations.

Thus Dominic Ori is in a position of a person whose cause has been heard by the District Court, but who has never intervened. It ha been held that the failure to file a formal motion to intervene is not fatal where the trial court has eventually granted leave to intervene (U.S. v. 1,830.62 Acres of Land (Western District Va. 1943), 51 F.Supp. 158) and that lack of service of a motion to intervene can be cured by a supplemental motion later served (Perry v. Godbe (C.C.D. Nev. 1897), 82 F. 141). It is true generally, and was true in Montana before the adoption of the Federal Rules of Civil Procedure, that failure to move for intervention was fatal to the party's right to participate in the action. Deitrich v. Steam Dredge and Amalgamator (1894), 14 Mont. 261, 268, 36 P. 81. See Spangler v. Pasadena Board of Education (9th Cir. 1977), 552 F.2d 1326.

The purpose of the motion for leave to intervene is to give the District Court the opportunity to determine whether the parties seeking intervention may intervene as a matter of right or by permission of the court. (Rule 24, M.R.Civ.P.) The rule that failure to move for intervention is fatal to the right of a party to participate in the action is not iron-clad, however. In this case, M & M Enterprises did not raise an objection to the presence of Dominic Ori in the case at the District Court level. The

6

Marinkovichs answered the joint cross-complaint only as to Patricia, and by no pleading then or subsequently advised the court or Dominic Ori that he was not properly a party in the action. The Marinkovich objection to the presence of Dominic Ori in the cause was first raised at the moment of the opening of trial. This was a cause where Dominic Ori could intervene as a matter of right, because his claim for wages, if properly supported, could only be paid out of the remaining assets of the corporation then being liquidated. The District Court's action in overruling the objection raised by Marinkovich at trial time is equivalent to authorizing intervention by Dominic Ori. The failure to raise objection to Ori's presence until the moment of trial amounts to a waiver of any objections to his intervention. These factors bring this case within the rules announced in Martindell v. International Tel. & Tel. Corp. (2d Cir. 1979), 594 F.2d 291, and In Re Beef Industry Anti-trust Litigation (5th Cir. 1979), 589 F.2d 786. In those cases though no formal motion for intervention had been made by the parties involved, the appeals court ruled on the merits of the appeals on grounds of waiver, and de facto or equivalent authorization for intervention. On those bases we sustain the District Court's order denying the objection of the Marinkovichs to the presence of Dominic Ori in the cause, but we warn, as did the court in In Re Beef Industry Anti-trust Litigation, supra, that "future litigants should not attempt to use this opinion to circumvent the clear requirements of the rule." 589 F.2d at 789.

The remaining issues with respect to the wage claims, we treat as one, though appellants object to the grant of the Ori wage claims on the grounds of the statute of limitations and that the District Court had no power to overrule the decisions of the liquidating directors. It is our view that the wage claim issues can be decided by looking at the powers of liquidating directors generally with

7

respect to their duties in winding up the affairs of the corporation.

Under the dissolution plan adopted by the corporation, a part of which we have quoted above, the corporation was not to "engage in any business activities," and "the directors then in office . . . shall continue in office solely for the purpose of winding up the business and affairs of the corporation." The only business of liquidating directors was the liquidation of the corporation. The grant of additional salaries not provided before the dissolution is not the proper business of the corporation in winding up.

The same situation existed in the facts shown in Duval v. Commissioner of Internal Revenue (5th Cir. 1932), 57 F.2d 496. There the corporation was dissolved on August 31, 1919. For income tax purposes, the corporation attempted to claim as a deduction salaries for officers based on entries made in the books of the business on December 31, 1919. The federal court ruled the attempt to claim such deduction was improper stating:

> ". . . the evidence negatived the conclusion that any corporate action with reference to additional salaries was taken before the dissolution of the corporation. After its dissolution in August, 1919, the corporation continued in existence as a body corporate for a prescribed time for the purpose of prosecuting or defending suits, settling its business, disposing of its property, and dividing its capital stock, but not for the purpose of continuing its business (Citing a state statute). The creation of liability for additional salaries was a business transaction requiring corporate action which could not be taken after the corporation ceased to exist for the purpose of continuing its business. An alleged liability for additional salaries of officers of the corporation which was not attempted to be created by any corporate action nor until after the corporation had been dissolved, was not a business expense incurred or paid by the corporation for which the statute (26 U.S.C.A. § 989) allows a deduction from gross income. It follows that the disallowance of the deduction was not erroneous." 57 F.2d at 498.

Although Duval, supra, is a tax case, under the principles enunciated therein and for the same reasons, none of the parties

8

here have the right to claim additional salaries not provided by corporate action before the dissolution. It is especially appropriate to apply the Duval rule here, where two directors representing 50 percent of the stock ownership of the corporation, vote to sustain their wage claims against the remaining assets of the dissolved corporation, and at the same time, vote to deny the wage claims of persons related to the ownership of the other 50 percent of the corporate stock though represented by one director. We note from the record, that following the death of Allie K. McFadden, Patricia Ori raised the question of the appointment of another board member to replace her mother and there the vote was two-to-one against the appointment of a new director, with Patricia Ori casting the dissenting vote.

Although neither party raised the issue of the power of the dissolved corporation to grant additional salaries to its officers, an action in interpleader is in equity and in such case, the provisions of section 3-2-204(5), MCA, come into play:

> "In equity cases and in matters of proceedings of an equitable nature, the Supreme Court shall review all questions of fact arising upon the evidence presented in the record, whether the same be presented by specification of particulars in which the evidence is alleged to be insufficient or not, and determine the same, as well as questions of law . . ."

The result of our view of the power of the liquidating directors here, is to deny to all of the parties their respective wage claims, penalties and attorneys fees based thereon. The further effect is to require the stakeholder, the plaintiffs in interpleader, to disburse the funds in their hands without regard to such wage claims.

Our holding that liquidating directors may not award salaries to its officers and shareholders for pre-dissolution services in the winding up process does not conflict with our statutes on voluntary corporate or shareholder dissolution. As noted above, the setting

9

of salaries for the conduct of corporate business pre-dissolution is a business activity of the corporation. When a statement of intent to dissolve a corporation is filed with the Secretary of State, under Montana law, the corporation "shall cease to carry on its business, except insofar as may be necessary for the winding up thereof." Section 35-1-905, MCA.

The record in this case is barren as to what steps the liquidating directors had taken to comply with Montana statutes on corporate dissolution. Regardless, under the plan of dissolution adopted to comply with 26 U.S.C. § 337, the directors had agreed "from and after the date of sale and transfer of the assets of the corporation [not to] engage in any business activities." One of the aims of 26 U.S.C. § 337, is for tax purposes to establish a strict but clear rule, within a specified time limitation, 12 months, upon which planners might rely and bring certainty and stability into the corporate liquidation area. Central Tablet Mfg. Co. v. U.S. (1974), 417 U.S. 673, 682, 94 S.Ct. 2516, 2522, 41 L.Ed.2d 398.

There remains the judgment against George T. Marinkovich and Ann C. Marinkovich personally, in favor of Patricia Ori in the sum of $3,000 for their alleged bad faith in relinquishing the corporation's claim to stained glass windows.

The value of the stained glass windows in the evidence varied from $20,000 to $5,000, the latter sum at which Dominic Ori apparently offered them for sale to another party. Marinkovichs claim that the stained glass windows were delivered to Harvey by Dominic Ori and therefore the claim for damages on this ground is moot. Ori contends on the other hand, that the delivery of the stained glass windows by Dominic Ori was not an act of transferring the title of the corporation in the windows to the third party. At the meeting of the liquidating directors, the same meeting in which the wage claims were considered, the claim with respect to the

10

stained glass windows was brought up. There the corporation's claim for the value of the stained glass windows was relinquished by the liquidating directors, again by a vote of two to one.

The District Court, in considering this matter, found that the stained glass pieces owned by the corporation was disposed of by a vote of the directors, but if the vote had been made by the shareholders, the question of disposal of the stained glass would have been "equally represented." The court concluded that such disposal of the stained glass was not in the regular course of business, and that the directors voting in favor of the disposal without submitting the same to a vote of the shareholders violated section 35-1-809, MCA (1979). On that basis, the District Court awarded Patricia Ori damages equal to one-half of its determined value of the stained glass windows, the sum of $3,000.

The record sustains the judgment for damages in favor of Patricia Ori.

Accordingly, this cause is reversed as to the wage claims, and all sums in judgment awarded in the District Court to George T. Marinkovich, Dominic C. Ori, and the estate of Allie K. McFadden, for wages, penalties, or attorneys fees are set aside; but the judgment of $3,000 against George Marinkovich and Ann C. Marinkovich in favor of Patricia Ori is affirmed.

_____
Justice

We Concur:

11

We concur:

_____
        Chief Justice

_____

_____
        Justices

I dissent from the majority's holding that approval of certain wage claims was a "grant of additional salaries not provided before the dissolution."

Montana's corporation statutes are based in large part upon the Model Business Corporation Act (1960) of the American Bar Association. Official comments to this Act are therefore useful in interpreting Montana statutes. Sections 35-1-904 through 906, MCA, dealing with liquidation and winding up, are counterparts to sections 85 and 87 of the Model Act. The comment to those sections provides in part:

"Historically corporate dissolution resulted in realty reverting to the grantor, personalty escheating to the sovereign and choses in action extinguished with the death of the corporation. This is no longer true. Statutes now prescribe the general effects of dissolution and the procedures to be followed.

"When dissolution has been authorized by the shareholders under section 83 or section 84, a statement of intent to dissolve the corporation is required by section 85 to be filed with the secretary of state. This constitutes notice to the state and public that dissolution proceedings have officially begun. After such filing the business of the corporation ceases except as necessary to wind up its business and affairs. Notice is given to creditors, assets are collected, liabilities discharged, and the remaining assets distributed to shareholders. The orderly liquidation of the corporation is assured and the corporation protected from a multitude of creditors' suits by dissatisfied shareholders by section 87(c) which provides for liquidation under the supervision of the court on applicatin by the corporation. Many jurisdictions have adopted the Model Act procedure in preference to the older one of dissolving first and constituting the directors as trustees of the liquidation which follows."

Under former Montana law, voluntary dissolution of a corporation occurred after application to the District Court where the principal place of business was situated. Section 15-1108, R.C.M. (1947). Upon verification of the statements contained in the application, the District Court issued a judgment declaring the corporation dissolved and naming the directors as trustees. Section 15-1113, R.C.M. (1947).

13

These statutory trustees were required to wind up the defunct corporation's affairs by "settling with its debtors and creditors and appropriating the amount of profit or loss." Gilna v. Barker (1927), 78 Mont. 357, 365, 254 P. 174, 177, citing Rohr v. Stanton Trust & Savings Bank (1926), 76 Mont. 248, 251, 245 P. 947, 948.

Montana repealed its statutes prescribing the trustee method of corporate dissolution in 1967. Directors no longer serve as statutory trustees, holding corporate assets in trust for the benefit of creditors. The process by which a corporation is dissolved requires that certain conditions precedent to dissolution be met. Filing of a notice of intent to dissolve and articles of dissolution are two such conditions precedent to voluntary dissolution. Articles of dissolution can be filed only after "all debts, liabilities, and obligations of the corporation have been paid and discharged or adequate provision has been made therefor and all of the remaining property and assets of the corporation have been distributed to its shareholders." Section 35-1-111, MCA (1981). Liquidation and discharge of debts precede dissolution. Dissolution occurs when the Secretary of State issues a certificate of dissolution, at which time the existence of the corporation ceases. Section 35-1-912(2), MCA (1981), formerly §15-2286, R.C.M. (1947).

M & M Enterprises was winding up its business and affairs when the wage claims were presented. Dissolution had not taken place.

The majority cites Duval v. Commissioner of Internal Revenue (5th Cir. 1932), 57 F.2d 496 in support of its holding that the liquidating directors lacked power to approve wage claims presented during the liquidation period. Duval addresses the issue of post-dissolution granting of

14

officers' salaries. It is distinquishable on its facts. Mr. Duval's wage claim was submitted 7 1/2 months after the corporation was dissolved. J. E. Duval Printing Company "ceased doing business on August 31, 1919, when it dissolved." Duval, 57 F.2d at 497. Mr. Duval assumed all the corporations's assets without paying any consideration and operated the business as a sole proprietorship thereafter. In March, 1920, he filed a business tax return for the year 1919. The return indicated that Mr. Duval, his wife, and daughter had taken a sizeable salary increase for services rendered before and after the dissolution. The additional salaries were claimed as a corporate tax deduction. The Internal Revenue Service disallowed deduction of the retroactive salaries as a pre-dissolution business expense.

The Ori and Marinkovich wage claims, on the other hand, were presented before dissolution of M & M Enterprises. The claims were not for additional salaries as corporate directors, but for functions generally performed by employees, i.e., clerking at the hotel's front desk, doing maintenance work on the premises. The trial court found that the "claims were never presented before because the corporation was not in a position to pay them until the hotel was sold." Trial Memorandum, March 11, 1982 at 7.

Payment of just debts of the corporation is an incident of the winding up process. The Ori and Marinkovich claims should not be automatically disallowed.

> "[A]lthough a director occupies a fiduciary relation to the stockholders, he is nevertheless entitled to demand payment for an honest debt due him from the corporation of which he is a director. (citation omitted) However, this rule must be tempered with the qualification that there are circumstances under which equity will not permit him to do so." Troglia v. Bartoletti and Casey (1969), 152 Mont. 365, 369-70, 451 P.2d 106, 108.

15

To hold that approval of such claims by directors of a dissolving corporation is <u>ultra vires</u> regardless of the circumstances thwarts legislative intent that all debts be paid or adequately provided for in the winding up period prior to dissolution. Approval or disapproval of claims should be based on general legal principles.

Justice